UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAMONT ALPHONSO JONES,

    Petitioner,                                                              Civil Action No. 14-CV-14849

v.                                                                                                      HON. BERNARD A. FRIEDMAN

CATHERINE S. BAUMAN,

    Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

This matter is before the Court on petitioner's petition for a writ of habeas corpus [docket entry 1]. Petitioner challenges his convictions for five counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(a), and one count of second-degree criminal sexual conduct, Mich. Comp. Laws § 750.520c(1)(a). He seeks habeas corpus relief on the ground that he received ineffective assistance of counsel. Respondent has filed an answer arguing that petitioner's ineffective assistance of counsel claim is meritless. The Court denies the petition and declines to issue a certificate of appealability.

**I. BACKGROUND**

Petitioner's convictions arise from the sexual assaults of J.R., who was only nine-years old when petitioner began abusing her. The Michigan Court of Appeals summarized the circumstances leading to petitioner's convictions as follows:

> The victim, 12 years old at the time of trial, lived with her mother. Defendant, a friend of the victim's older brother, began caring for the victim when her mother was away and practically lived in the home. When the victim was nine years old, she became involved in a sexual relationship with defendant. Their first sexual encounter occurred when they went upstairs to a bedroom and

defendant rubbed his penis against her vagina. After this initial encounter, the victim and defendant would have sex almost every other day, including oral and anal sex.

One particular occasion occurred in September 2010, when the victim and defendant were engaged in vaginal intercourse in the living room. One of the victim's brothers and his friend looked through the window and saw defendant and the victim. Defendant told the victim to leave the house and that he would tell her brother it was a different girl. However, the victim's brother testified that he saw the victim and defendant having sex. The friend also testified that he saw defendant having sex with a girl, but he could not see the girl's face. Both the brother and his friend testified that defendant told them not to tell anyone and that he was with a different girl.

The victim admitted that she had been suspended from school on numerous occasions and that she had been placed on a tether. She also indicated that she had been sent to a mental hospital. The victim's mother testified that the victim had some truancy problems that worsened over time, and that the victim was admitted to Hawthorne, a psychiatric hospital, after refusing to go to school.

According to the victim, her mother paid for two cellular phones with which the victim and defendant would exchange text messages. Defendant referred to the victim as "baby babe" or "wifey" in some of the text messages. The victim also claimed that she told a school counselor that she was having sex with defendant. The counselor, however, testified that the victim said she was having sex with a male classmate, although the counselor did not believe her. The counselor contacted child protective services and the victim's mother, communicating suspicions that the victim might be pregnant.

The victim also recalled one time when she was 11 years old and her friend was spending the night. While the victim and defendant were having sex, the friend walked into the bedroom. The friend testified to seeing the victim's vagina in defendant's mouth, and that defendant said he would kill himself if they told anyone about the relationship. The victim then sent a message to her friend's mother, confessing that she was having sex with defendant. The victim's parents were notified, and they took the victim to the hospital for a physical examination.

Because the victim recently had sex with defendant, nurses took a number of samples including a swab of the victim's neck because defendant would suck on and kiss her neck. A certified sexual assault nurse examiner testified that the victim stated that she had sex with defendant and he threatened to kill himself if she refused. The nurse testified that the vaginal examination was consistent with the victim's reported history.[1]

An expert in forensic biology and DNA analysis testified that DNA from the victim's neck was consistent with defendant's DNA. The expert explained that the sample was more consistent with direct contact, not a secondary transfer that would occur if the victim touched a surface with defendant's body fluid and then touched her neck. Another person's DNA, not belonging to the victim or defendant, was detected but the sample was too small to be used as a match.

After reporting the sexual relationship, the victim participated in two Kids Talk interviews.[2] Before the first Kids Talk interview, defendant told the victim that they could get out of the situation and be together if she denied that they had sex. Accordingly, the victim denied having sex with defendant and reported that she had sex with two boys at school. Before her second interview with Kids Talk, the victim smoked marijuana and had sex with defendant. She claimed that during this second interview, she told the truth about having sex with defendant.

The victim and defendant continued their sexual relationship even after the second Kids Talk interview. The victim testified that she last had sex with defendant in a car parked at the West Chester Towers, he lost his cellular phone, and he was arrested when they returned home. Defendant, however, testified that he was looking for his cellular phone in the car and the victim came out to apologize to him and tell him that she would fix the situation. The arresting police officer testified that he saw defendant leaning outside of a parked car and saw a female exit the car and go into a nearby house.

At trial, defendant testified to a much different version of events. He claimed that he considered the victim to be like a sibling and that he did not look at her in a sexual way. He denied using her mother's cellular phone for text messages. He claimed that he had sex in the house with girlfriends, and that when the victim's brother and friend saw him in living room, he was having sex with one of his girlfriends. Defendant also testified that the victim was

3

> out of control and that she hung out with boyfriends all the time. According to defendant, the victim was involved in a sexual relationship with her friend's brother, defendant threatened to tell the victim's mother about the relationship, and in retaliation the victim reported that she was having sex with defendant.
>
> [1] While at the hospital, the victim sent a message to [a] male friend with whom she had a relationship.
>
> [2] Kids Talk is an independent group that specializes in forensic interviews with children.

*People v. Jones*, No. 305586, 2013 WL 4746730, *1–2 (Mich. Ct. App. Sept. 3, 2013).

Following a jury trial in Wayne County Circuit Court, petitioner was convicted of five counts of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct. On June 13, 2011, he was sentenced to concurrent prison terms of twenty-five to fifty years for each first-degree criminal sexual conduct conviction and five to fifteen years for the second-degree criminal sexual conduct conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising these claims: (i) inadmissible hearsay; (ii) cruel and unusual punishment; (iii) the prosecution failed to correct false testimony; (iv) confrontation clause; (v) ineffective assistance of counsel; (vi) denied right to present an alibi witness; (vii) denied right to a plea agreement; (viii) ineffective assistance of appellate counsel; and (ix) cumulative effect of errors denied defendant his right to fair trial. The Michigan Court of Appeals affirmed Petitioner's convictions and sentences. *Jones*, 2013 WL 4746730, at *10.

Petitioner sought leave to appeal in the Michigan Supreme Court raising two claims for relief: ineffective assistance of trial counsel and improperly allowed prejudicial hearsay testimony. The Michigan Supreme Court denied leave to appeal. *People v. Jones*, 840 N.W.2d 314 (Mich. 2013).

Petitioner then filed the pending habeas petition through counsel. He argues that his defense counsel was ineffective in failing to call three witnesses: two of J.R.'s classmates with whom she had sexual relations, and Hailey Wilcox, one of Petitioner's girlfriends.

**II. STANDARD**

Petitioner's claims are reviewed using the standards established by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

> A state court's decision is "contrary to" . . . clearly established law if it "applies a rule that contradicts the governing law set forth in [United States Supreme Court cases]" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."

*Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the

Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" *Id.* at 520–21 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

"[W]hile the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). Finally, a federal habeas court must presume the correctness of state court factual determinations, *see* 28 U.S.C. § 2254(e)(1), and a petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998). Put differently, only factual determinations that are "objectively unreasonable in light of the evidence presented in the state-court proceeding" will be overturned. *McKinney v. Ludwick*, 649 F.3d 484, 488 (6th Cir. 2011) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

**III. DISCUSSION**

Petitioner argues that habeas relief is warranted because his defense attorney was ineffective in failing to call two of the victim's classmates to testify that they had sexual

intercourse with her and in failing to call Hailey Wilcox to show that it was she, not the victim, who was seen by the victim's brother having sex with Petitioner.

AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013). The standard for obtaining relief is "difficult to meet." *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013). In the context of an ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1984), the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

An ineffective assistance of counsel claim has two components: First, petitioner must show that counsel's performance was deficient and, second, that the deficiency prejudiced his defense. *Strickland*, 466 U.S. at 687. To establish deficient representation, petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. To establish prejudice, petitioner must show that, but for the constitutionally deficient representation, there is a "reasonable probability" that the outcome of the proceeding would have been different. *Id.* at 694.

Petitioner's claim that defense counsel should have called as witnesses two of the victim's male classmates with whom she had been sexually active was denied by the Michigan Court of Appeals because the state court found the evidence was inadmissible under Michigan's rape shield statute. *Jones*, 2013 WL 4746730 at *8. State-law evidentiary claims are not

7

cognizable on habeas review. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Given the Michigan Court of Appeals' decision that this evidence was inadmissible, petitioner cannot show how he was prejudiced by counsel's failure to attempt to call these witnesses when their testimony would have been excluded. Moreover, petitioner fails to submit an affidavit from either of these potential witnesses indicating what their testimony would have been. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). Petitioner offers no evidence to support his claim. Absent such proof, he is unable to establish that he was prejudiced by counsel's failure to call these witnesses.

Petitioner also claims that counsel was ineffective for failing to call as a witness Hailey Wilcox. He argues that Wilcox would have testified that she was the person the victim's brother saw having sex with petitioner on the living room couch. Other than his own arguments, petitioner fails to make an offer of proof in his habeas petition showing that Wilcox was willing to testify and would have testified in accordance with petitioner's version of events. In his direct appeal to the Michigan Court of Appeals, petitioner submitted an unsworn "affidavit of truth" from Wilcox along with his motion for an evidentiary hearing. The Michigan Court of Appeals held that the statement, which was not notarized, was not an affidavit under state court rules. *Jones*, 2013 WL 4746730, at *8, n.8. The state court also held that petitioner's testimony about Wilcox at trial indicated that he saw no reason to bring Wilcox to testify at trial. *Id.* at *8. The Michigan Court of Appeals held that, in light of this record, petitioner failed to overcome the presumption that counsel's decision not to call Wilcox was sound trial strategy. *Id.*

Petitioner provides no argument or evidence to show that the state court's decision was an unreasonable application of *Strickland*. The evidence against petitioner was

8

strong and included DNA evidence, the victim's statements to several individuals that she was engaging in intercourse with petitioner, explicit text messages between petitioner and the victim, and the victim's friend's testimony that she witnessed the victim and petitioner engaging in oral sex. Counsel reasonably could have concluded that, in light of the strength of this evidence, Wilcox's testimony would not have assisted petitioner's defense. Other than the "affidavit of proof" disregarded by the Michigan Court of Appeals, petitioner offers no evidentiary support which would overcome the AEDPA's doubly deferential standard. Habeas relief is denied on this claim.

Accordingly,

IT IS ORDERED that the petition for a writ of habeas corpus is denied and dismissed.

IT IS FURTHER ORDERED that a certificate of appealability is denied because petitioner has failed to make a substantial showing of the denial of a federal constitutional right, and leave to appeal *in forma pauperis* is denied because the appeal would be frivolous. *See Dell v. Straub,* 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002).

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated: April 28, 2017
      Detroit, Michigan

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 28, 2017.

                                               s/Johnetta M. Curry-Williams
                                               Acting in the Absence of Carol Mullins
                                               Case Manager